IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Matthew C. Gallamore, ) | Civil Action No. 6:08-2133-HFF-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed applications for disability insurance benefits (DIB) and supplemental security income (SSI) benefits on October 29, 2003, alleging that he became unable to work on August 28, 2003. The applications were denied initially and on reconsideration by the Social Security Administration. On July 28, 2004, the plaintiff

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

requested a hearing. After a *de novo* hearing, the administrative law judge (ALJ), on September 25, 2006, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended. The Appeals Council subsequently remanded the case to the ALJ for further proceedings.

Upon remand, a supplemental hearing was held on October 26, 2007. On November 16, 2007, the ALJ again found that the plaintiff was not entitled to benefits. The ALJ's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on April 11, 2008. The plaintiff then filed this action for judicial review.

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)    The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.
>
> (2)    The claimant has not engaged in substantial gainful activity since August 28, 2003, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> (3)    The claimant has the following severe combination of impairments: fibromyalgia, bipolar and history of carpal tunnel syndrome (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medical equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926(.
>
> (5)    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work except that he is limited to unskilled work with only occasional interaction with the public. He has no postural, manipulative, environmental, visual or communicative limitations and no limitations for using the upper and lower extremities.

(6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)     The claimant was born on December 4, 1968 and was 34 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8)     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.15645 and 416.964).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

(11)     The claimant has not been under a disability, as defined in the Social Security Act, from August 28, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

3

impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1503(a). *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

4

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **EVIDENCE PRESENTED**

The plaintiff completed high school (Tr. 348, 452), and worked as a communications technician (Tr. 344). He alleged that he became disabled on August 28, 2003 (Tr. 57), due to fibromyalgia, depression, bipolar disorder and attention deficit disorder (ADD) (Tr. 343). The plaintiff was 38 years old at the time of the ALJ's post-remand decision (Tr. 57).

The plaintiff has a history of fibromyalgia, mild sclerosis (scarring) of the sacroiliac joints, mild degenerative disc disease in his neck, bilateral carpal tunnel

syndrome, bipolar I disorder since age five, anxiety and narcissistic personality traits (Tr. 81-82, 86, 100, 152, 242-46, 363, 364, 385-91).

In August 2003, the plaintiff presented to Dr. Jack W. Brunson, a family practitioner who had treated him for several years (*see* Tr. 155-208, 367-91), for medication refills. The plaintiff reported that he had been fired from his job because he "could not keep up adequately either emotionally or physically." He reported ongoing pain, fatigue, muscle weakness, and depression and anxiety, but with improved mood swings. Mental status examination revealed intact judgment and "no depression, anxiety, or agitation." Dr. Brunson assessed unchanged myalgia/myositis NOS (not otherwise specified) and improved bipolar affective disorder NOS. He opined that the plaintiff's chronic pain, fibromyalgia and bipolar disorder were "disabling," and that his job performance rapidly deteriorated as the stress and physical demands of the work accumulated. He adjusted the plaintiff's medications (Tr. 152-53).

In September 2003, Dr. Brunson noted that the plaintiff denied having any fatigue, malaise, depression, memory loss, or mental disturbance, but did complain of weakness, tremors, headaches and anxiety. Examination showed he was in no acute distress and had a normal gait and an anxious mood. Dr. Brunson assessed "deteriorating" bipolar disorder and unchanged chronic back pain (Tr. 149-50).

In November 2003, Dr. Bryan Atwood evaluated the plaintiff and noted that he had waxing and waning problems with muscle strength and numbness throughout his body, but that if he continued to change positions, his symptoms were "fairly well controlled [without] much problem" and allowed him to "perform most activities around the house," including cooking, cleaning and mowing the lawn, without much difficulty. The plaintiff reported that if he held an object for a period of time, he would drop it due to numbness and tingling in his hands. Dr. Atwood noted that the plaintiff used a cane, but did not bring it to the examination. On examination, objective findings were predominantly normal and the

6

plaintiff had a normal gait.  Dr. Atwood opined that the plaintiff "would be able to walk for at least 2 hours in an 8 hour day."  He also noted that the plaintiff's impairments did not appear to affect his activities of daily living.  Dr. Atwood noted that the plaintiff's bipolar symptoms were variable, but that if he stayed on medication, he usually did "quite well" (Tr. 100-02).

In questionnaires completed in November 2003 in connection with the applications for benefits, the plaintiff reported that he was in constant pain and had to take frequent breaks, and that his most frequent activities were lawn work and laundry (Tr. 331).  His mother reported that he had been sick "most of or all of his life" (Tr. 341).

In December 2003, the plaintiff saw Severin G. Wellinghoff, Ph.D., for a consultative psychological evaluation in connection with his applications for benefits.  The plaintiff reported that his feelings "continue[d] to be the same today as they were when he was a child."  He thought that antidepressant and antianxiety medications helped him, but still complained of sleep problems and difficulty with concentration.   Dr. Wellinghoff observed that the plaintiff was agitated, but had a fairly appropriate affect and thought content.  He did not demonstrate good memory, but was able to stick with a task fairly well.  As to activities, the plaintiff reported that he cared for his personal needs, did laundry, and tried to talk with neighbors, but said he had no friends and did not get along with family members.   An IQ test revealed low average intellectual functioning, average verbal comprehension and perceptual organization, a weakness in digit symbol-coding, and a strength in vocabulary.  Dr. Wellinghoff diagnosed bipolar disorder with a current GAF of 41[2] (Tr. 104-07).

---

[2]A GAF (global assessment of functioning) of 41 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 2000) ("DSM-IV").

In February 2004, State agency psychologist Xanthia P. Harkness, Ph.D., reviewed the plaintiff's medical records and determined that his affective, anxiety and personality disorders resulted in "mild" restriction of activities of daily living; "moderate" difficulties in social functioning and concentration, persistence or pace; and no episodes of decompensation (Tr. 127). With regard to the plaintiff's specific mental limitations, Dr. Harkness found he had "moderate" limitations in the ability to understand, remember, and carry out detailed instructions and interact appropriately with the general public, but was "not significantly limited" in the remaining 17 of 20 categories of basic work activities (Tr. 112-13).

Also in February 2004, Dr. Brunson noted that the plaintiff was off most of his medications due to financial difficulty. He noted, however, that the plaintiff's bipolar disorder was "improved" (Tr. 146-47).

In March 2004, State agency physician Dr. Steven J. Fass, reviewed the plaintiff's medical records and determined that he could perform the exertional requirements of medium[3] work, i.e., lift 50 pounds occasionally and 25 pounds frequently, stand/walk about six hours in an eight-hour workday, and sit about six hours in an eight-hour workday. Dr. Fass found the plaintiff could frequently climb, balance, stoop, kneel, crouch and crawl. He made the following observations:

- Physical allegations are not supported by med[ical] obj[ective] evidence from numerous MDs, despite subjective claims of inabilities/restrictions.
- Chronic pain, however, considered in assessment.
- Psychological component of conditions seem[s] far more significant (see mental RFC) and may be escalating/magnifying physical.

(Tr. 136-40).

---

[3]*See* 20 C.F.R. § 404.1567(c) (definition of medium work).

In June 2004, State agency psychologist Renuka R. Harper, Ph.D., reviewed the plaintiff's medical records and determined that his affective, anxiety and personality disorders caused "mild" restriction of activities of daily living; "moderate" difficulties in maintaining social functioning and in concentration, persistence or pace; and no episodes of decompensation.  She concluded that the plaintiff's symptoms were "severe but would not preclude the performance of simple routine work activities" (Tr. 233).  As to the plaintiff's specific mental limitations, Dr. Harper opined that he had "moderately limited" ability to understand, remember and carry out detailed instructions, interact appropriately with the general public and set realistic goals, but that he was "not significantly limited" in the remaining 16 of 20 categories of basic work activities (Tr. 212-13).

In June 2004, the plaintiff told Dr. Brunson that he was having more pain, which was not responding to medication (Tr. 383).

In July 2004, State agency physician Dr. Seham El-Ibiary reviewed the plaintiff's medical records and determined that he could perform the exertional requirements of medium work, i.e., lift 50 pounds occasionally and 25 pounds frequently, stand/walk about six hours in an eight-hour day, and sit about six hours in an eight-hour day.  Dr. El-Ibiary did not assess any postural, manipulative, communicative or environmental limitations (Tr. 235-38).

Also in July 2004, Dr. Brunson noted that the plaintiff had increased anxiety related to family members and an ex-girlfriend, and excellent pain relief with a Duragesic patch (Tr. 271).

In August 2004, the plaintiff told Dr. Brunson his pain continued to be better on Duragesic, but that his carpal tunnel symptoms were worse, requiring him to wear wrist supports.  He also complained of fatigue, malaise, back and joint pain, and stiffness.  A mental status examination revealed "no depression, anxiety, or agitation," and a physical examination revealed spinal muscle spasms, pain and tenderness (Tr. 269).

In October and December 2004, the plaintiff told Dr. Brunson that Symbyax was helping his bipolar symptoms (Tr. 264, 267).

In May 2005, Dr. Brunson saw the plaintiff for medication refills and noted that he was stable and "doing well" (Tr. 262).

In July 2005, the plaintiff reported no change in pain, but agreed his mood disorder was better on Symbyax (Tr. 260).

In January 2006, the plaintiff asked Dr. Brunson for a referral to a psychologist for his depression.  His physical complaints generally remained the same as in prior examinations (Tr. 258).

Also that month, he complained of muscle twitching over the past year. Physical and neurological examinations were normal.  Dr. Brunson directed him to discontinue the Symbyax (Tr. 254-58).

In May 2006, Dr. Brunson treated the plaintiff for sinusitis, and noted within his report that the plaintiff was alert and cooperative with a "normal" mood, affect, attention span and concentration.  Motor and neurological findings were unremarkable (Tr. 380).

In October 2006, the plaintiff presented to Dr. Brunson with complaints of pain, malaise and depression.  Dr. Brunson noted that he was in "mild pain/distress" and that neurologic findings were normal.  He adjusted the plaintiff's medications (Tr. 376-77).

In November 2006, the plaintiff saw Dr. Brunson for an annual physical.  He denied having any fatigue, malaise, sleep problems, concentration problems, headaches, memory loss, anxiety or depression.  He did complain of joint and back pain, numbness, tingling, and weakness.  Other than multiple tender points, physical and neurological examinations were normal (Tr. 371-73).

In January 2007, Dr. Brunson noted no changes in the plaintiff's condition (Tr. 416).

In an undated letter, Dr. Brunson reiterated his prior opinion that the plaintiff was disabled. Specifically, he found the plaintiff could not sit, stand or walk "for very long," and could not do these activities in combination for a normal work day. Dr. Brunson also stated that the plaintiff had difficulty with self-care, and that his impairments limited his ability to invest himself in tasks, to focus and to maintain concentration. Dr. Brunson opined that the plaintiff was "unable to engage in any kind of employment," including sedentary employment. He stated that the plaintiff's subjective complaints were "very consistent" with his objective findings of muscle spasms and trigger points, and observations of agitation, anxiety and depression over the years (Tr. 365).

In July 2007, following the Appeals Council's remand, the plaintiff underwent a consultative orthopedic examination by Dr. Charles B. Thomas. The plaintiff complained of pain in his right wrist, left long finger and right knee. Examination revealed good range of motion in his right hand, with no crepitus (popping sounds) or synovitis. His left long finger was mildly tender but neurovascularly intact. His right knee had normal range of motion, no ligament instability, and normal patellar tracking. Neurologically, the plaintiff had full 5/5 motor strength in all major muscle groups, normal reflexes, and intact sensation. Dr. Thomas assessed bipolar disorder, "possible" fibromyalgia, and pain of unknown cause. He then completed a Medical Source Statement about the plaintiff's ability to do physical work-related activities, and opined that he could lift and carry up to 50 pounds occasionally and 20 pounds frequently; sit eight hours, stand four hours, and walk two hours (at a time and total during an eight-hour workday). Dr. Thomas opined that the plaintiff did not require the use of a cane to ambulate and that he could continuously use both hands and feet. He opined that the plaintiff could frequently kneel, crouch, and crawl; occasionally climb stairs, balance, and stoop; and never climb ladders (Tr. 392-400).

In August 2007, the plaintiff underwent a consultative psychological examination by Ron O. Thompson, Ph.D. The plaintiff exhibited frequent pain behavior and

11

a variable mood. He was alert and well-oriented, and gave adequate effort on examination. He appeared to be distracted by his pain and lost concentration "at times." He denied having any significant mood swings or any psychiatric hospitalizations since childhood. He denied having any hallucinations. Dr. Thompson estimated that the plaintiff had below average intellectual functioning, and an IQ test revealed low average scores. The plaintiff reported that his activities of daily living consisted of performing light chores, cooking, taking care of his ill mother "24 x 7," and going to medical appointments and stores. He reported that he had "gone downhill physically and mentally" since 2003. On some tests, the plaintiff had little patience and gave up easily, but on other tests he "r[o]se to the challenge." Dr. Thompson concluded that the plaintiff had bipolar disorder by report, a pain disorder associated with both psychological factors and general medical condition, and low average cognitive functioning. He opined that there would "[p]robably [be] major barriers to maintaining pace and persistence" due to his distractibility and intermittent attentional deficiency. Dr. Thompson found, however, that the plaintiff would have no difficulty in managing benefits if they were awarded. He completed a Medical Source Statement about the plaintiff's ability to do mental work-related activities and found the following: (1) no restrictions in the ability to understand, remember, and carry out simple instructions or make judgments on simple decisions; (2) "mild" restrictions in the ability to understand and remember complex instructions; and (3) "moderate" restrictions in the abilities to carry out complex instructions, make judgments on complex decisions, interact appropriately with the public/supervisors/co-workers, and respond to changes (Tr. 403-08).

In September 2007, Dr. Brunson completed a Clinical Assessment of Pain form in which he opined that the plaintiff's pain would distract him from adequate performance of daily activities or work and require increased medication; that significant side effects could be expected to limit his effectiveness; that he would be "unable to function at a productive level of work"; and that little improvement was likely (Tr. 410-11).

Dr. Brunson also completed a Physical Capacities Evaluation form in which he opined, in part, that the plaintiff could sit for two hours total, stand for one hour total, and walk for one hour total in an eight-hour workday, and never lift over 10 pounds. He also opined that the plaintiff had postural and manipulative limitations, required frequent breaks to reduce pain, and might be sedated by his medications (Tr. 414-15).

At the October 2007 administrative hearing, the plaintiff testified that he drove short distances and took his mother to medical appointments occasionally (Tr. 454-55). He said he straightened things up around the house, brought in the mail, and microwaved meals (Tr. 464-65). He also said he did some shopping (Tr. 466) and watched television "six or eight" hours per day in short periods (Tr. 470). He testified that he could be on his feet or sit for two to three hours at a time each (Tr. 463-64). However, he testified that he wore braces on his knees, ankles and wrists, and occasionally used a walker (Tr. 467). From a social standpoint, he testified that he talked with his son, ex-wife, neighbors and landlord occasionally, but did not have very many friends (Tr. 468). He testified that his aunts cared for his mother's personal needs (Tr. 469).

The plaintiff testified that he stopped working because his muscles "wouldn't work" and he could not "walk right any more" (Tr. 455). He alleged problems with standing, walking, sitting and sleeping (Tr. 458), and said his problems had worsened over time (Tr. 459). On a scale of one to 10 (10 being the worst possible pain), he rated his normal pain as nine to 10 (Tr. 461), but he testified that his medications made it bearable (Tr. 467).

The plaintiff also testified that Dr. Thomas spent five minutes with him at most and did not listen to him (Tr. 460).

Vocational expert Karl S. Rock Weldon testified that the plaintiff's past work was medium to heavy in exertion and semi-skilled to skilled (Tr. 475).[4] The ALJ asked Mr.

---

[4]*See* 20 C.F.R. §§ 404.1567(d) (definition of heavy work), 404.1567(b), (c) (definitions of semi-skilled and skilled work).

Weldon whether a hypothetical individual of the plaintiff's age, education and work experience who could perform medium unskilled[5] work, with frequent postural limitations and no more than occasional contact with the general public, could perform any work (Tr. 475-76, 478). Mr. Weldon testified that the individual could perform the light[6] unskilled jobs of packer (1,100 jobs upstate and 214,000 jobs nationally) and inspector (800 jobs upstate and 274,000 jobs nationally), and the medium unskilled jobs of caretaker (800 jobs upstate and 211,000 jobs nationally), production helper (700 jobs upstate and 214,000 jobs nationally), and cleaner (900 jobs upstate and 184,000 jobs nationally) (Tr. 477-78).

In response to a question about a hypothetical individual with the limitations assessed by Dr. Thomas, the vocational expert testified that the individual could still perform the light jobs of packer and inspector (Tr. 479).

In response to a question about a hypothetical individual with the functional limitations assessed by Dr. Brunson, the vocational expert testified that the individual could not perform competitive work (Tr. 479-80, 487).

In response to a question about a hypothetical individual who was "extraordinarily distracted by pain," the vocational expert testified that the individual could not perform competitive work (Tr. 484).

## **ANALYSIS**

The plaintiff alleges disability commencing August 28, 2003, due to fibromyalgia, depression, bipolar disorder, and attention deficit disorder ("ADD"). He was 38 years old at the time of the ALJ's post-remand decision (Tr. 57). The ALJ found that the plaintiff had the residual functional capacity ("RFC") to perform medium work except that

[5]See 20 C.F.R. § 404.1568(a) (definition of unskilled work).

[6]See 20 C.F.R. § 404.1567(b) (definition of light work).

14

he is limited to unskilled work with only occasional interaction with the public. The ALJ further found that the plaintiff had no postural, manipulative, environmental, visual, or communicative limitations and no limitations for using the upper and lower extremities. The plaintiff argues that the ALJ erred by (1) failing to follow the remand order of the Appeals Council; (2) failing to properly consider his nonexertional impairments; (3) failing to properly consider the opinion of treating physician Dr. Jack Brunson; (4) failing to properly assess his subjective complaints of pain; and (5) failing to include all of his impairments in the hypothetical to the vocational expert.

### *Treating Physician*

The plaintiff argues that the ALJ failed to give proper weight to the opinion of treating physician Dr. Jack Brunson. This court agrees. The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case. *See* 20 C.F.R. §416.927(d)(2) (2006); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors: (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4)

15

the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion.  20 C.F.R. §404.1527(d)(2)-(5).  Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion.  SSR 96-2p, 1996 WL 374188, *5.  As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected.  Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927.  In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* 1996 WL 374188, *4.

In August 2003, Dr. Brunson opined that the plaintiff's chronic pain, fibromyalgia, and bipolar disorder were "disabling," and that his job performance rapidly deteriorated as the stress and physical demands of the work accumulated (Tr. 152-53).  In an undated letter, Dr. Brunson reiterated his prior opinion that the plaintiff was disabled.  Specifically, he found the plaintiff could not sit, stand or walk "for very long," and could not do these activities in combination for a normal work day.  Dr. Brunson also stated that the plaintiff had difficulty with self-care and that his impairments limited his ability to invest himself in tasks, to focus, and to maintain concentration.  Dr. Brunson opined that the plaintiff was "unable to engage in any kind of employment," including sedentary employment.  He stated that the plaintiff's subjective complaints were "very consistent" with his objective findings of muscle spasms and trigger points and observations of agitation, anxiety, and depression over the years (Tr. 365).  In September 2007, Dr. Brunson completed a Clinical Assessment of Pain form in which he opined that the plaintiff's pain would distract him from adequate performance of daily activities or work and require

16

increased medication; that significant side effects could be expected to limit his effectiveness; that he would be "unable to function at a productive level of work"; and that little improvement was likely (Tr. 410-11). Dr. Brunson also completed a Physical Capacities Evaluation form in which he opined, in part, that the plaintiff could sit for two hours total, stand for one hour total, and walk for one hour total in an eight-hour workday, and never lift over 10 pounds. He also opined that the plaintiff had postural and manipulative limitations, required frequent breaks to reduce pain, and might be sedated by his medications (Tr. 414-15).

> The ALJ found as follows with regard to Dr. Brunson's opinion:
>
> In this case, Dr. Brunson did not provide a reasonable basis for his opinion. The findings made during his course of treatment do not support his statement. He did not obtain x-rays after 2002 or nerve conduction studies after Dr. Schwartz's testing in 2003. He did not refer claimant back to a rheumatologist or orthopedist after 2003 or make any referrals to mental health between 2002 and 2006. He has maintained claimant on long-term narcotic pain medication, but did not give urine drug testing to determine if claimant was taking the medication appropriately. After a reference to a pain medication contract in January 2003, he did not obligate claimant to such a contract. He apparently relied on claimant's subjective statements to determine his functional capacity. He never recommended that claimant pursue surgery and mentioned the need for physical therapy only intermittently.
>
> The most comprehensive report from Dr. Brunson is the January 2007 physical exam report. His findings in that report do not significantly differ from those made by Dr. Thomas. I note that Dr. Brunson did not do muscle strength testing and gave no results of range of motion testing.
>
> Thus, I find Dr. Brunson's opinion is inconsistent with his own findings and the remainder of the evidence. I find Dr. Brunson's opinion is not entitled to controlling weight and does not support my conclusion . . . .

(Tr. 29).

17

As argued by the plaintiff, the ALJ did not properly consider this treating physician's many opinions as to the plaintiff's limitations. The ALJ stated in his decision that the fact Dr. Brunson did not refer the plaintiff to an orthopedist was inconsistent with his opinion of disability. However, as pointed out by the plaintiff, orthopedists do not treat fibromyalgia, bipolar disease, major depressive disorder, and personality disorder. The ALJ further recited that Dr. Brunson did not refer the plaintiff to a rheumatologist. The ALJ was specifically ordered by the Appeals Council in its order dated May 31, 2007, to "obtain additional evidence concerning the claimant's physical and mental impairments" including a "consultative rheumatologic examination, if available . . ." (Tr. 297). The ALJ ordered post-remand orthopedic and psychological examinations of the plaintiff; however, he did not obtain a consultative rheumatologic examination, and there is nothing to show that one was not available. Accordingly, if it was not something that the ALJ thought was essential, it is thus a double standard to then disregard Dr. Brunson's opinion in part because he did not make such a referral. Further, as to Dr. Brunson's failure to recommend surgery, it is unclear which of the plaintiff's alleged disorders, including fibromyalgia, bipolar disease, depression, and personality disorder, could be addressed by surgery.

The ALJ also did not consider the above-cited factors in his decision disregarding Dr. Brunson's opinion. Dr. Brunson treated the plaintiff on a frequent basis since at least 1998, and he gave multiple consistent opinions as to the plaintiff's impairments (Tr. 364-91). Further, Dr. Brunson's opinions concerning pain and the limitations imposed by pain are consistent with the findings of Dr. Thompson, who performed a consultative psychological examination of the plaintiff in August 2007. Dr. Thompson found that the plaintiff exhibited frequent pain behavior and a variable mood. He appeared to be distracted by his pain and lost concentration "at times." Dr. Thompson concluded that the plaintiff had bipolar disorder by report, a pain disorder associated with both psychological factors and general medical condition, and low average cognitive

functioning.  He opined that there would "[p]robably [be] major barriers to maintaining pace and persistence" due to his distractibility and intermittent attentional deficiency (Tr. 403-08).

Based upon the foregoing, this court recommends that upon remand the ALJ be directed to reconsider the opinions of Dr. Brunson in accordance with the above law. In addition, this court recommends that the ALJ be directed to obtain a rheumatological evaluation of the plaintiff.

### Nonexertional Impairments

The plaintiff next argues that the ALJ failed to properly assess and consider his nonexertional impairments, including his bipolar disorder, fibromyalgia, and chronic pain. A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence.  20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility."  *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).  Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record."  Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, *4.

In addition to the objective medical evidence, the factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

     (1)    the individual's daily activities;

     (2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;

      (3)      factors that precipitate and aggravate the symptoms;

      (4)      the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

      (5)      treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

      (6)      any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

      (7)      any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

The ALJ found as follows with regard to the plaintiff's pain and subjective symptoms:

> Taken together, this evidence shows that claimant's pain and subjective symptoms are of mild to moderate severity, are responsive to conservative treatment and are not severe enough to restrict claimant from performing medium, unskilled work.
>
> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

(Tr. 28). In making his analysis, the ALJ cited the plaintiff's daily activities, including laundry, cooking, cleaning, mowing the lawn, and driving (Tr. 26-27). He also pointed out inconsistencies in the plaintiff's statements (Tr. 27), such as his testimony that his aunts cared for his elderly mother's personal needs (Tr. 469), which contradicted his statement to Dr. Thompson that he cared for his mother "24 x 7" (Tr. 404). The ALJ also discussed the plaintiff's admission that he could be on his feet for two to three hours at a time, and

20

noted that the plaintiff's pain responded to conservative treatment (Tr. 28). Further, the ALJ pointed out that, while plaintiff reported wearing braces on his knee and ankles and occasionally using a walker, there was no evidence that any physician prescribed these or found them necessary during the relevant period (Tr. 28).

The plaintiff argues that the ALJ "never considered or evaluated or analyzed [his] pain." He further argues, "[The ALJ] did not recite or consider the seven factors to be considered in assessing the pain" (pl. amended brief 6). The ALJ did in fact recite the seven factors and spent nearly three pages of his decision evaluating the plaintiff's subjective complaints (Tr. 25-28). It appears to this court that the ALJ did consider the factors he cited. However, this court does agree with the plaintiff that the ALJ should have considered his excellent work record - of nearly 20 years - up until the time of his alleged onset date of disability (Tr. 300). Furthermore, the ALJ should also consider Dr. Brunson's and Dr. Thompson's opinions regarding the plaintiff's pain in assessing the credibility of the plaintiff's allegations.

The plaintiff further argues that based upon the vocational expert's testimony the ALJ should have found him disabled. In response to a question about a hypothetical individual with the functional limitations assessed by Dr. Brunson, the vocational expert testified that the individual could not perform competitive work (Tr. 479-80, 487). In response to a question about a hypothetical individual who was "extraordinarily distracted by pain," the vocational expert testified that the individual could not perform competitive work (Tr. 484). The ALJ stated that he rejected "this hypothetical for the same reasons [he rejected] Dr. Brunson's ultimate findings" (Tr. 30).

"[I]n order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). As discussed above, this court

21

is of the opinion that the ALJ failed to properly consider Dr. Brunson's opinion.  Accordingly, upon remand and reconsideration of Dr. Brunson's opinion and a consultative rheumatological evaluation of the plaintiff, the ALJ should also be instructed to obtain supplemental vocational expert testimony and to include all of the plaintiff's impairments, both severe and nonsevere, in the hypothetical question to the vocational expert.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, this court recommends that the Commissioner's decision be reversed under sentence four of 42 U.S.C. §405(g), with a remand of the cause to the Commissioner for further proceedings as discussed above.


s/William M. Catoe
United States Magistrate Judge

July 10, 2009

Greenville, South Carolina